1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10  CHARLES ROBINSON,

11          Plaintiff,

12     v.

13  WASHINGTON STATE SPECIAL
    COMMITMENT CENTER CHIEF
14  MEDICAL DIRECTOR, DR. LESLIE
    SZIEBERT; WASHINGTON STATE
15  SPECIAL COMMITMENT CENTER
    GALINA DIXON, ARNP,
16
            Defendants.
17

CASE NO. 3:15-CV-05555-RJB-DWC

REPORT AND RECOMMENDATION
ON DEFENDANT DIXON'S MOTION
TO DISMISS

Noting Date: June 17, 2016

18     The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United

19  States Magistrate Judge David W. Christel. Before the Court is Defendants' Motion to Dismiss

20  filed by Defendant Galina Dixon ("Dixon"). Dkt. 26.

21     The Court concludes Plaintiff has failed to state a claim against Defendant Dixon upon

22  which relief can be granted. Therefore, the Court recommends Defendant Dixon's motion be

23  granted, and Plaintiff given leave to amend his complaint to state a claim against Defendant

24  Dixon.

# BACKGROUND[1]

Plaintiff is a civilly-committed detainee at the Washington State Special Commitment Center ("SCC"). Dkt. 6, p. 1; ¶ 8.2.[2] Plaintiff alleges he had a seizure on November 9, 2013, for which he was taken to the SCC medical clinic for treatment. Dkt. 6, ¶ 5.1. The next day, Plaintiff returned to the SCC medical clinic and reported to RN Deborah Burney that he was experiencing severe pain in his foot which prevented him from walking. Dkt. 6, ¶ 5.2-5.3. RN Burney advised Plaintiff his foot might be broken, provided him with an orthopedic boot, and informed him he would have an appointment with Defendant Dixon on November 12, 2013. Dkt. 6, ¶ 5.3.

Plaintiff did, in fact, see Defendant Dixon on six occasions within the next month. Dkt. 6, ¶¶ 5.4-5.11. First, on November 12, 2013 Plaintiff informed Defendant Dixon his knee and foot were hurting and the pain would escalate when he applied weight to his foot. Dkt. 6, ¶ 5.4. Defendant Dixon informed him his foot was broken, which would cause both foot and knee pain, and advised Plaintiff she would order x-rays immediately. Dkt. 6, ¶ 5.4.

Second, on November 14, 2013, Plaintiff returned to the SCC medical clinic after submitting a sick call slip enquiring when the x-rays were scheduled. Defendant Dixon told Plaintiff the x-rays would be ordered again. Dkt. 6, ¶ 5.5.

Third, on November 16, 2013, Plaintiff submitted another sick call slip to enquire as to why he had not yet had x-rays. Dkt. 6, ¶ 5.6. In response, Plaintiff was returned to the SCC

---

[1] Plaintiff has alleged seven pages of facts in the Complaint. *See* Dkt. 6, pp. 6-12. The Court has considered all factual allegations contained in the Complaint. However, throughout this Report and Recommendation, the Court will only discuss the factual allegations relevant to determining if Plaintiff has stated a claim for which relief can be granted.

[2] The SCC exclusively houses individuals whom a Washington State court has found, beyond a reasonable doubt, to be sexually violent predators ("SVP"). Wash. Rev. Code § 71.09.010 *et seq.* (2015). Determinations of SVP status and commitment to the SCC are effectuated in a civil proceeding, and the primary purpose of the commitment is long-term intensive inpatient treatment. Wash. Rev. Code § 71.09.010 (2015).

1   medical clinic where he was examined by Defendant Dixon. Dkt. 6, ¶ 5.6. At this examination,

2   Defendant Dixon opined Plaintiff's foot was "looking good and the swelling is going down."

3   Dkt. 6, ¶ 5.6. Defendant Dixon had Plaintiff remove the orthopedic boot and asked him to walk

4   on the foot; however, Plaintiff was unable to do so, and experienced severe pain which nearly

5   rendered him unconscious. Dkt. 6, ¶ 5.6. Defendant Dixon placed Plaintiff back into the

6   orthopedic boot, and again ordered x-rays. Dkt. 6, ¶ 5.6.

7   　　　　Fourth, on December 2, 2013, Plaintiff returned to the SCC medical clinic, where

8   Defendant Dixon opined Plaintiff's foot "looked well" and the swelling had gone down. Dkt. 6, ¶

9   5.7. Based on this examination, Defendant Dixon removed Plaintiff's orthopedic boot and

10  rescinded an order allowing Plaintiff to receive his meals in his unit. Dkt. 6, ¶ 5.7. Plaintiff still

11  had not received x-rays of his foot. Dkt. 6, ¶ 5.7.

12  　　　　Fifth, on December 4, 2013, Plaintiff again returned to the SCC medical clinic due to the

13  pain in his foot and knee, where Defendant Dixon prescribed him with a two-week supply of

14  ibuprofen and referred him to a physical therapist. Dkt. 6, ¶ 5.8.

15  　　　　Sixth, Plaintiff returned to the SCC medical clinic on December 10, 2013, complaining of

16  pain in his foot and knee. Dkt. 6, ¶ 5.9. Defendant Dixon again represented to Plaintiff she would

17  order x-rays immediately. Dkt. 6, ¶ 5.9.

18  　　　　On December 11, 2013, Plaintiff's leg was x-rayed. Dkt. 6, ¶ 5.10. The next day,

19  Defendant Dixon informed Plaintiff the x-rays revealed he had broken four bones on the top of

20  his foot. Dkt. 6, ¶ 5.11. Based on this diagnosis, Defendant Dixon again placed Plaintiff's foot in

21  an orthopedic boot and ordered an off-site consultation with an orthopedic specialist. Dkt. 6, ¶

22  5.11. The orthopedic specialist, Dr. Hossein Pakzad, performed additional foot x-rays on

23  December 19, 2013 and prescribed Plaintiff with an air cast for six to eight weeks. Dkt. 6, ¶ 5.12.

24

1    Over the following nine months, Plaintiff alleges Defendant Dixon continued to have

2  some involvement in treating Plaintiff's injuries. For example, Defendant Dixon indicated

3  Plaintiff's air cast could be removed on February 8, 2014, as six weeks had passed from Dr.

4  Pakzad's prescription. Dkt. 6, ¶ 5.13. Next, Defendant Dixon discontinued one of Plaintiff's

5  medications at the end of February or beginning of March, 2014, and Defendant Sziebert

6  restarted the medication four weeks later. Dkt. 6, ¶ 5.15. Defendant Dixon also prescribed

7  various medications (including ibuprofen, vicodin, and an unspecified pain relief rub), ordered

8  additional x-rays, and ordered physical therapy. *See* Dkt. 6, ¶¶ 5.18, 5.20, 5.30. However, the

9  balance of Plaintiff's allegations between December, 2013 and September, 2014, involve

10 treatment decisions made by other providers. *See* Dkt. 6, ¶¶ 5.12-5.39.[3]

11                            **STANDARD OF REVIEW**

12   A motion to dismiss can be granted only if Plaintiff's Complaint, with all factual

13 allegations accepted as true, fails to "raise a right to relief above the speculative level." *Bell*

14 *Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

15             To survive a motion to dismiss, a complaint must contain sufficient
               factual matter, accepted as true, to "state a claim to relief that is
16             plausible on its face." A claim has facial plausibility when the
               plaintiff pleads factual content that allows the court to draw the
17             reasonable inference that the defendant is liable for the misconduct
               alleged. The plausibility standard is not akin to a probability
18             requirement, but it asks for more than a sheer possibility that a
               defendant has acted unlawfully.
19
20 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 556, 570).

21 _____

22   [3] For example, Plaintiff also alleges, based on a physical therapist's recommendation on
   August 26, 2014, Plaintiff received an MRI of his leg. Dkt. 6, ¶ 5.33. Plaintiff alleges he
23 submitted several sick call slips to the SCC medical clinic, which were answered by RN Brian
   Rizzieri. Dkt. 6, ¶ 5.34-5.36. Plaintiff ultimately received the MRI on September 22, 2014,
24 which revealed a fractured knee. Dkt. 6, ¶ 5.37.

REPORT AND RECOMMENDATION ON
DEFENDANT DIXON'S MOTION TO DISMISS -
4

1    A complaint must contain a "short and plain statement of the claim showing that the

2    pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the

3    statement need only give the defendant fair notice of what the . . . claim is and the grounds upon

4    which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted).

5    However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me

6    accusation." *Iqbal*, 556 U.S. at 678.

7    While the Court must accept all the allegations contained in the Complaint as true, the

8    Court does not have to accept a "legal conclusion couched as a factual allegation." *Id.*

9    "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

10   statements, do not suffice." *Id.*; *Jones v. Community Development Agency*, 733 F.2d 646, 649

11   (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to

12   state section 1983 claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While the Court

13   is to construe the complaint liberally, such construction "may not supply essential elements of

14   the claim that were not initially pled." *Pena*, 976 F.2d at 471.

15                                    **DISCUSSION**

16   In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he

17   suffered a violation of rights protected by the Constitution or created by federal statute, and (2)

18   the violation was proximately caused by a person acting under color of state law. *See Crumpton*

19   *v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to

20   identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271

21   (1994). To satisfy the second prong, a plaintiff must allege facts showing how individually

22   named defendants caused, or personally participated in causing, the harm alleged in the

23   complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

24

1      I.      **Eighth Amendment Claim**

2          Defendant Dixon argues Plaintiff has failed to state a claim for deliberate indifference

3   under the Eight Amendment. However, the Due Process Clause of the Fourteenth Amendment,

4   rather than the Eighth Amendment, applies to claims of constitutionally inadequate medical care

5   for involuntarily committed SVPs at the SCC. *Mitchell v. State of Washington*, ___ F.3d. ___,

6   2016 WL 945677, at *3 (9th Cir. 2016) (*citing Youngberg v. Romeo*, 457 U.S. 307, 321-22, 102

7   S.Ct. 2452, 2462, 73 L.Ed.2d. 28 (1982) *and Ammons v. Wash. Dep't. of Soc. & Health Servs.*,

8   648 F.3d 1020, 1027 (9th Cir. 2011)). *See also Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979)

9   *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). Thus, Plaintiff's claims—as well as

10  Defendant Dixon's motion to dismiss—must be analyzed under the Fourteenth Amendment Due

11  Process Clause.

12      II.     **Fourteenth Amendment Due Process Claim**

13      A.  *Legal Standard*

14          1.  Deliberate Indifference

15          Though the Due Process Clause, rather than the Eighth Amendment, governs claims of

16  constitutionally inadequate medical care by SVPs, the Ninth Circuit has held "SVPs must, at a

17  minimum, be afforded the rights afforded prisoners confined in a penal institution. Thus, the

18  Eighth Amendment still provides a floor for the level of protection that SVPs must receive under

19  the Fourteenth Amendment, and because the contours of the Eighth Amendment are more

20  defined, Eighth Amendment jurisprudence may provide helpful guidance as to the standards to

21  be applied." *Hydrick v. Hunter*, 500 F.3d 978, 989 (9th Cir.2007), *vacated on other grounds,* 556

22  U.S. 1256, 129 S.Ct. 2431, 174 L.Ed.2d 226 (2009).

23

24

REPORT AND RECOMMENDATION ON
DEFENDANT DIXON'S MOTION TO DISMISS -
6

An Eighth Amendment medical claim has two elements: (1) "the seriousness of the prisoner's medical need and [(2)] the nature of the defendant's response to that need." *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin,* 974 F.2d at 1059 (*quoting Estelle,* 429 U.S. at 104). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *Id.* at 1059-1060.

If a plaintiff shows he suffered from a serious medical need, he must then show the prison officials responded to the need with deliberate indifference. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1970). "Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (internal citation omitted); *see Hudson v. McMillan,* 503 U.S. 1, 6 (1992). Deliberate indifference to a prisoner's serious medical need requires "a purposeful act or failure to act on the part of the defendant." *McGuckin,* 974 F.2d at 1060. In other words, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *Id.* A prison official, accordingly, will not be found deliberately indifferent to a prisoner's serious medical needs, "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

1    Deliberate indifference "may appear when prison officials deny, delay or intentionally

2    interfere with medical treatment, or [ ] may be shown by the way in which prison physicians

3    provide medical care." *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988). However, delay in

4    providing a prisoner treatment does not constitute an Eighth Amendment violation unless the delay

5    causes substantial harm. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407

6    (9th Cir. 1985); *Amarir v. Hill*, 243 Fed. Appx. 353, 354 (9th Cir. 2007). Further, a mere

7    "'difference of medical opinion' as to the need to pursue one course of treatment over another"

8    does not constitute deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

9    A prisoner must instead show the chosen course of treatment "was medically unacceptable under

10   the circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's]

11   health." *Id. See also Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).

12                    2.   *Youngberg* Professional Judgment

13   Though the Ninth Circuit has historically used the deliberate indifference framework to

14   analyze claims of constitutionally deficient medical care by a civilly committed individual, the

15   Ninth Circuit recently evaluated a SVP's claims of constitutionally deficient medical care solely

16   using the "professional judgment" test articulated in *Youngberg v. Romeo. See Mitchell*, ___

17   F.3d. ___, 2016 WL 945677, at *3. Under the *Youngberg* professional judgment standard,

18   "[i]nvoluntarily committed patients in state mental health hospitals have a Fourteenth

19   Amendment due process right to be provided safe conditions by the hospital administrators . . . .

20   [W]hether a hospital administrator has violated a patient's constitutional rights is determined by

21   whether the administrator's conduct diverges from that of a reasonable professional." *Ammons*,

22   648 F.3d at 1027. A medical decision, "if made by a professional, is presumptively valid;

23   liability may be imposed only when the decision by the professional is such a substantial

24

REPORT AND RECOMMENDATION ON
DEFENDANT DIXON'S MOTION TO DISMISS -
8

1   departure from accepted professional judgment, practice, or standards as to demonstrate that the

2   person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S.

3   at 323. Under both the Eighth Amendment deliberate indifference and the *Youngberg*

4   professional judgment standard, mere medical malpractice or negligence is insufficient to

5   demonstrate a Constitutional violation. *See Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285,

6   292, 50 L.Ed. 2d 251 (1976); *Patten*, 274 F.3d at 842-43.

7       The Court analyzes Plaintiff's claims under both the Eighth Amendment deliberate

8   indifference standard *and* under the *Youngberg* professional judgment standard.

9       B.  *Application of Standard*

10      Defendant Dixon argues Plaintiff has failed to properly plead both elements of a claim of

11  deliberate indifference. Specifically, Defendant Dixon argues Plaintiff failed to plead the

12  existence of a serious medical need, or Defendant Dixon was deliberately indifferent to

13  Plaintiff's serious medical need.

14      Plaintiff alleges chronic pain and difficulty walking due to a broken foot. Dkt. 6, ¶¶ 5.2-

15  5.22-5.38. Viewed in the light most favorable to Plaintiff, these allegations sufficiently establish

16  the existence of a serious medical need. *See McGuckin*, 974 F.2d at 1059-60. *C.f.*, *Jett v. Penner*,

17  439 F.3d 1091, 1096, n.1 (9th Cir. 2006) (noting it was undisputed the plaintiff's broken thumb

18  constituted a serious medical need). Further, Plaintiff has sufficiently pled Defendant Dixon was

19  aware of Plaintiff's serious medical need. *See* Dkt. 6, ¶ 5.4.

20      However, while Plaintiff has adequately pled the existence of a serious medical need of

21  which Defendant Dixon was aware, he has failed to properly plead Defendant Dixon was

22  deliberately indifferent to that need. Plaintiff makes the conclusory allegation Defendant Dixon

23  was responsible for denying, delaying, or otherwise preventing Plaintiff from obtaining adequate

24

1  medical care. Dkt. 6, ¶¶ 3.14, 5.42. But, a review of Plaintiff's complaint does not reveal factual

2  allegations consistent with this conclusory statement.  Plaintiff has alleged: 1) Defendant Dixon

3  indicated she either ordered, or said she would order, x-rays on four separate occasions between

4  November 12, 2013 and December 11, 2013, the day his leg was actually x-rayed; 2) Defendant

5  Dixon prescribed Plaintiff with pain relief medication, physical therapy, and an outside

6  consultation with an orthopedic specialist during the  thirty-two days immediately following

7  Plaintiff's injury; and, 3) Plaintiff was seen by an orthopedic specialist eight days after his x-rays,

8  who fitted him with an air cast and opined Plaintiff should have been seen no later than 3 to 4 days

9  after the injury. Dkt. 6, ¶¶ 5.4-5.12.

10         However, Plaintiff has not alleged facts which indicate Defendant Dixon was responsible

11  for delaying Plaintiff's x-rays, or delaying his receipt of an outside consultation with an orthopedic

12  specialist.  In fact, Plaintiff alleges Defendant Dixon did, in fact, order x-rays and physical therapy,

13  and treated his injuries with medication management and ongoing use of an orthopedic boot. Dkt.

14  6, ¶¶ 5.4-5.11. Even taken in the light most favorable to Plaintiff, these allegations do not plausibly

15  establish Defendant Dixon took any action or failed to take any action which denied or delayed

16  Plaintiff's treatment. *See Iqbal*, 556 U.S. at 678; *Wilhelm v. Rotman*, 680 F.3d 1113, 1122-23 & n.

17  8 (9th Cir. 2012); *Hunt v. Dental Dep't*, 865 F.2d 198, 200-01 (9th Cir. 1989).[4]

18         Plaintiff also appears to disagree with the specific treatment he was provided, and questions

19  several of the medical choices made by Defendant Dixon. For example, Defendant Dixon

20

---

21         [4] Plaintiff also alleges throughout his complaint Defendant Dixon can be found liable premised on
a theory of vicarious liability, based on the actions of others at the SCC. *See, e.g.*, Dkt. 6, ¶ 6.4. However,

22  *Respondeat Superior* is inapplicable in a Section 1983 action. *See Monell v. Department of Social
Services*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978). "[W]hen a supervisor is found

23  liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable
action or inaction, not held vicariously liable for the culpable action or inaction of his or her

24  subordinates." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). *See also Iqbal*, 556 U.S. at 676.

1   attempted to remove Plaintiff's orthopedic boot twice prior to his appointment with an orthopedic

2   specialist, and removed Plaintiff's air cast after six weeks. *See* Dkt. 6, ¶¶5.6, 5.7. However,

3   Plaintiff alleges Defendant Dixon removed Plaintiff's orthopedic boot based on her personal

4   observations of Plaintiff's condition. *See* Dkt. 6, ¶¶ 5.6 (asking Plaintiff to remove his boot, as his

5   foot was "looking good and the swelling is going down."), 5.7 ("Defendant Dixon reasoning was

6   that the Plaintiff's foot looked well and the swelling had gone down."). Similarly, Plaintiff

7   claims Defendant Dixon removed his prescribed air cast after six weeks, because she understood

8   the orthopedic specialist's orders to require a cast for six weeks. Dkt. 6, ¶ 5.13.

9         Plaintiff also alleges Defendant Dixon discontinued one of Plaintiff's prescriptions in

10   either late February or early March, 2014, while Plaintiff alleges Dr. Sziebert had prescribed

11   Plaintiff this medication to Plaintiff "for the rest of his life" in order to build up his bones. Dkt. 6,

12   ¶ 5.15.  However, Plaintiff does not allege how these decisions were medically unacceptable

13   under the circumstances. *Jackson*, 90 F.3d at 332. Plaintiff's allegations, at most, amount to a

14   "'difference of medical opinion' as to the need to pursue one course of treatment over another,"

15   between Defendant Dixon and other providers in the record, which does not rise to the level of

16   deliberate indifference. *Jackson*, 90 F.3d at 332.

17         Plaintiff's allegations against Defendant Dixon are also insufficient under the *Youngberg*

18   professional judgment standard. As a professional, Defendant Dixon's medical decisions are

19   presumptively valid. *Youngberg*, 457 U.S. at 323.  Therefore, absent allegations indicating

20   Defendant Dixon's conduct was "such a substantial departure from accepted professional

21   judgment, practice, or standards as to demonstrate that the person responsible actually did not

22   base the decision on such a judgment," the Court cannot impose liability for a professional's

23   medical decisions. *Id. See also Ammons v. Washington Dept. of Social and Health Services*, 648

24

1  F.3d 1020, 1038 (9th Cir. 2011) ("exercising *any* professional judgment will shield a state

2  hospital professional from § 1983 liability [under *Youngberg*.]") (Bybee, J., concurring in part

3  and dissenting in part).

4       Plaintiff's factual allegations in the complaint amount to, at most, a claim Defendant

5  Dixon should have provided x-rays and arranged for an off-island consultation sooner. Dkt. 6, ¶¶

6  5.1-5.43; 8.6. As discussed above, however, the Plaintiff has not pled facts which plausibly

7  suggest Defendant Dixon delayed or rejected Plaintiff's treatment requests, or that Defendant

8  Dixon's management of Plaintiff's medications or orthopedic devices was a "substantial

9  departure" from accepted professional judgment." *Youngberg*, 457 U.S. at 323. *See also Jackson*,

10  90 F.3d at 332 (noting, where a prisoner disagrees with a chosen course of treatment, the

11  prisoner must demonstrate the treatment "was medically unacceptable under the circumstances").

12       In addition to the factual allegations discussed above, Plaintiff points to codes governing

13  the licensing and discipline of nurse practitioners contained in Washington State statutes and

14  regulations to argue Defendant Dixon's conduct fell below the appropriate level of care. Dkt. 6, ¶

15  3.11. *See* Wash. Rev. Code §§ 18.79, 18.130; Wash. Admin. Code. §§ 246-840-700, 246-840-

16  710. However, the forms of conduct prohibited by Plaintiff's cited authorities are inapposite to

17  the constitutional standards of deliberate indifference or *Youngberg* professional judgment. *See,*

18  *e.g.*, Wash. Admin. Code § 246-840-710 (citing the conduct described in Wash. Admin. Code §

19  18-130-180 as grounds for disciplinary action for violations of standards of nursing conduct or

20  practice); Wash. Admin. Code § 18-130-180(4) (incorporating incompetence, negligence, and

21  malpractice in the definition of "unprofessional conduct"). The Eighth Amendment deliberate

22  indifference standard, as well as the *Youngberg* professional judgment standard, require more

23  than mere negligence on the part of the Defendant. *Estelle,* 429 U.S. at 106; *Patten*, 274 F.3d at

24

1   842-43 (noting a  claim of negligence only requires a showing of "*any* departure," from the

2   standard of care, rather than the "*substantial* departure" required by *Youngberg*).[5]

3       Finally, in his response to Defendant Dixon's motion to dismiss, Plaintiff has made

4   several new allegations not contained in Plaintiff's complaint. *See* Dkt. 27, p. 4. Because these

5   allegations are not a part of Plaintiff's complaint, they are not relevant to resolving Defendant

6   Dixon's motion to dismiss. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("When

7   reviewing a motion to dismiss, we 'consider only allegations contained in the pleadings, exhibits

8   attached to the complaint, and matters properly subject to judicial notice.") (*quoting Swartz v.*

9   *KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam)).

10      As Plaintiff has failed to allege facts which would plausibly suggest Defendant Dixon

11  was deliberately indifferent to Plaintiff's serious medical needs, or Defendant Dixon's conduct

12  was a substantial departure from accepted professional judgment, practices, or standards,

13  Plaintiff has failed to state a claim under the Fourteenth Amendment Due Process clause under

14  both the Eighth Amendment deliberate indifference standard *and* the *Youngberg* professional

15  judgment standard.

16      III.    **Fourteenth Amendment Equal Protection Claim**

17      The Fourteenth Amendment's Equal Protection Clause "is essentially a direction that all

18  persons similarly situated should be treated alike."  *City of Cleburne, Tex. v. Cleburne Living*

19  *Center*, 473 U.S. 432, 439 (1985).  To bring a successful equal protection claim, a plaintiff must

20  show differential treatment from a similarly situated class. *See Washington v. Davis*, 426 U.S.

21  229, 239 (1976).  For this differential treatment to give rise to a claim under 42 U.S.C. § 1983,

22  ────────────────

23      [5] In the same vein, Plaintiff's allegations pertaining to *res ipsa loqitur* fail to state a due process
    claim. *See Reber v. United States*, 951 F.2d 961, 964 (9th Cir. 1991). *Res ipsa loquitur*, if applicable,
    allows only for an inference of negligence, which cannot constitute a violation of the stricter standards of

24  deliberate indifference or *Youngberg*'s professional judgment standard. *Id.*; *Estelle*, 429 U.S. at 106.

1  "one must show intentional or purposeful discrimination."  *Draper v. Rhay*, 315 F.2d 193, 198

2  (9th Cir. 1963) (inmate failed to show § 1983 violation in absence of "intentional or purposeful

3  discrimination.")

4        Defendant Dixon has moved to dismiss all of Plaintiff's claims against her; however,

5  Defendant Dixon has not argued how Plaintiff has failed to plead an equal protection claim under

6  the Fourteenth Amendment. Nonetheless, for the same reason Plaintiff did not sufficiently plead

7  a cause of action under the Fourteenth Amendment Due Process Clause as to Defendant Dixon,

8  Plaintiff has failed to plead a cause of action under the Fourteenth Amendment Equal Protection

9  Clause as to Defendant Dixon.

10        For Plaintiff to successfully plead a cause of action predicated on the equal protection

11  clause of the Fourteenth Amendment, Plaintiff must allege differential treatment and "intentional

12  or purposeful discrimination" on the part of the Defendant. Plaintiff alleges he was denied a

13  grievance procedure which would allow him to address his concerns with SCC staff about the

14  conditions of his confinement. Dkt. 6, ¶ 7.4. Plaintiff alleges he has a basic right to file a grievance,

15  and his inability to file grievances amounts to unequal treatment between SCC residents and

16  similarly situated prisoners or other committed persons. Dkt. 6, ¶¶ 7.4, 7.5. However, there is no

17  constitutionally protected right to a specific grievance process. *See Ramirez v. Galaza,* 334 F.3d

18  850, 860 (9th Cir.2003) (citing *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir.1988)). Further, even

19  assuming Plaintiff has stated an equal protection claim premised on the lack of a grievance process,

20  Plaintiff has not plead *Defendant Dixon* was in any way responsible, or even involved, in

21  preventing Plaintiff from filing a grievance. *See* Dkt. 15, ¶¶ 6.1-6.28. In fact, Plaintiff has not plead

22  he ever attempted to file a grievance at all.

23

24

1    Because Plaintiff has failed to allege facts which could plausibly establish Defendant

2    Dixon engaged in intentional or purposeful discrimination, Plaintiff has failed to state a claim

3    under the Fourteenth Amendment Equal Protection Clause.

**CONCLUSION**

5    Based on the foregoing, the Court concludes Plaintiff has failed to state a claim on which

6    relief can be granted. Accordingly, the Court recommends Defendant Dixon's Motion to Dismiss

7    be granted. The Court further recommends Plaintiff be given leave to amend his complaint in

8    order to state a claim against Defendant Dixon. *See Lucas v. Dep't of Corrections*, 66 F.3d 245,

9    248-49 (9th Cir. 1995) ("unless it is absolutely clear that no amendment can cure the defect . . . a

10   pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend

11   prior to dismissal of the action.")

12   Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

13   fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

14   6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

15   review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

16   imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on June

17   17, 2016, as noted in the caption.

18   Dated this 26th day of May, 2016.

19

20                                        David W. Christel
                                          United States Magistrate Judge
21

22

23

24